**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KEITH BURTON,**

                **Plaintiff,**

**-vs-**                                                     **Case No. 6:05-cv-403-Orl-DAB**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security,**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**     **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on November 5, 2001. R. 91-94, 118-20. He alleged an onset of disability on June 6, 2000, due to a bulging disc at L4-5, lumbar strain, degenerative disc disease, torn paraspinal muscles, fainting spells, nausea, and injuries

resulting from a car accident in October 2001 that include whiplash, neck and head injuries, and personality charged with insomnia. R. 91,118,162. His application was denied initially and upon reconsideration. R. 106, 111. Plaintiff requested a hearing, which was held on June 16, 2004, before Administrative Law Judge Theodore S. Haynes (hereinafter referred to as "ALJ"). R. 342-79. In a decision dated December 2, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-27. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 9-10. The Appeals Council denied Plaintiff's request on February 4, 2005. R. 6-8. Plaintiff filed this action for judicial review on March 16, 2005. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a bulging disc, degenerative disc disease, torn paraspinal muscles, fainting spells, nausea, and injuries resulting from a car accident in October 2001 that included whiplash, neck and head injuries, and personality charged with insomnia. R. 162. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered degenerative disc disease of the lumbar spine, with mild right-sided disc protrusion at L4-5; degenerative disc disease of the cervical spine with minor disc bulging at C2-3; bilateral carpal tunnel syndrome; a depressive disorder, NOS (not otherwise specified); a possible cognitive disorder, NOS; and a mixed bipolar disorder, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16, 25-26, Findings 3-4. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform modified but substantial range of light and sedentary work activity, in that he can stand/walk throughout a normal workday, 45-60 minutes at a time, and sit during a workday, 45-60

minutes at a time. He is somewhat limited by having to wear bilateral wrist splints in that he cannot perform constant writing, but he clearly can perform fine bilateral manual dexterity movements without undue difficulty. R. 21, 26, Finding 6.

The ALJ also found that Plaintiff had nonexertional mental limitations in that he had no more than "moderate" limitation regarding his daily activities, with only "mild" to "moderate" limitations as to social functioning and only a "mild" limitation regarding concentration, with no documented episodes of deterioration or decompensation in work or work-like settings that were/are of extended duration; his mental RFC had been impacted by only slight to moderate limitations in understanding, remembering, and carrying out detailed and simple job instructions and slight to moderate limitations on the claimant's capacity to deal with the public in a work environment. R. 22, 26, Finding 6. In making these determinations, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision.[1] R. 23-24. Considering Plaintiff's vocational profile and RFC and using vocational expert (VE) testimony, the ALJ determined that Plaintiff retained the ability to perform his past relevant work as a security clerk. R. 25-26, Findings. 7, 8. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 26, Finding 9.

Plaintiff now asserts three points of error. First, he contends that the ALJ erroneously utilized the VE's testimony in finding that he could perform his past relevant work. Second, he argues that the ALJ erred by not considering the full extent of his mental impairments or his combination of impairments or in properly including all impairments in the hypothetical to the VE. Third, Plaintiff

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, medical findings and medications prescribed, and Plaintiff's stated daily activities. R. 23-24.

-3-

contends the ALJ erred in evaluating his credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R.

§ 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

**A.     Past relevant work**

Plaintiff contends that the ALJ erred in utilizing the testimony of the VE to find that Plaintiff could perform his past relevant work. because, according to Plaintiff, a vocational expert should not enter the sequential analysis for determining disability until after a claimant is found unable to do past relevant work. The Commissioner responds Plaintiff erroneously relies on precedent which only applies in the Fourth Circuit and disingenuously argues that such precedent is applicable in the Eleventh Circuit, which it is not.

At step four of the five-step sequential evaluation process, the ALJ must determine whether or not the claimant is able to perform his past relevant work. "Past relevant work" is work experience that was done within the last fifteen years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The Vocational Expert ("VE") testified at the hearing that Plaintiff's past relevant work would be characterized as a delivery driver for Lowe's,

semi-skilled and medium duty; security clerk, semi-skilled, sedentary; dishwasher/food prep, unskilled, medium; and landscaper/laborer, semi-skilled, medium. R. 373-74.

> The ALJ asked the VE:
>
> Assume that I have an individual that's between the ages of 33 and 36 with an associate degree. Assume that they would be confined to light or sedentary work. Specifically in regards to security clerk job, assume that the person has the following sit/stand options. Assume that they could only average to sit for 45 minutes to an hour but assume that the job would have to be a job where a person could stand within that period of time. They wouldn't necessary have to sit or stand or sit for 45 minutes to an hour. They may sit 20 minutes, 30 minutes, 40 minutes but they wouldn't have to sit any longer than a job, than an hour at one time before they could get up and stretch and move about. Assume that as far as standing is concerned, that they have about the same limitations and walking approximately the same limitations. Assume he also has bi-lateral carpal tunnel syndrome which requires him to have hand splints on both hands and assume that as a result of that, that the person had some problems with bi-lateral dexterity. Assume that the have gross dexterity in both hands but had some limited fine dexterity. Assume that they have to have a job, a job would not be one that would require them to do a great deal of, of repetitive twisting and bending of the hands and the wrists. They can pick up a pen and write for say ten minutes at a time but it would, the job would have to be one that, that wouldn't require constant writing. Based on the testimony here, how would that effect [*sic*] the security job that we talked about and also the sit/stand option?

R. 374-75.  The VE testified that the hypothetical individual could perform the security clerk job.  R. 375.  The ALJ followed up with the VE:

> Assume from a, a mental standpoint that the person, his ability to understand and remember short instructions, and simple instructions was slight to moderate impaired, moderately impaired and, and carrying out simple instructions, slight to moderately impaired meaning that they would be impaired but they would still be able to function. Assume that carrying out detailed instructions and remembering detailed instructions, there would be a moderate impaired. Ability to make simple work related decisions would be slight to moderate and assume that the interaction with the public, the impairment would be slight to moderate. Interactions with supervisors and co-workers would be slight. Responding to work changes in routine settings would be slight to moderate. Would that effect [*sic*] that particular job that we talked about?

R. 377-78.  The VE stated it would not affect the job.  R. 378.

Plaintiff contends that the ALJ erred in utilizing the testimony of the VE at step 4 to find that Plaintiff could perform his past relevant work because a VE should not enter the sequential analysis for determining disability until after a claimant is found unable to do past relevant work. Plaintiff relies on the Fourth Circuit case of *Smith v. Bowen*, 837 F.2d 635, 636 (4th Cir. 1987) and states in a footnote that, although the Commissioner disagreed with the *Smith* decision in Acquiescence Ruling (AR) 90-3(4)), the Commissioner has since rescinded the AR, effective September 25, 2003 (*See* 68 FR 51317-02), implying that the *Smith* decision is now applicable in all circuits.

The Commissioner argues that Plaintiff's position ignores case law from the Eleventh Circuit, which contradicts the *Smith* case, and Plaintiff misstates the status of the current legal standards governing the use of VE testimony at step four of the sequential evaluation process. Following the decision in *Smith v. Bowen*, 837 F.2d 635 (4th Cir. 1987) – in which the Fourth Circuit proscribed the use of VE testimony to determine whether a claimant's RFC would preclude performance of past relevant work – the Commissioner disagreed with the holding and issued Acquiescence Ruling (AR) 90-3(4), limiting its application to cases prosecuted in the Fourth Circuit. As the Commissioner points out, "There is not now, nor has there ever been, a proscription on using VE testimony at step four of the sequential analysis in the Eleventh Circuit. Rather, in the Eleventh Circuit, the reliance on VE testimony at step four of the sequential analysis is widely accepted." *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Hennes v. Commissioner of Social Security*, 130 Fed. Appx. 343, 346 & n. 2 (11th Cir. 2005) (under SSA's regulations, ALJ may use a VE in making the determination of whether claimant can perform past relevant work, and rejecting plaintiff's citation to non-binding contrary authority in *Smith v. Bowen*).

In *Bechtold v. Massanari*, the court held: "Although the assistance of vocational experts is usually sought by administrative law judges at step five of the sequential evaluation of disability, in every circuit save one it is not error for an administrative law judge to use the services of a vocational expert at step four of the analysis to determine whether a claimant can return to her past relevant work." 152 F. Supp.2d 1340, 1345 & n.4 (M.D. Fla. 2001) (citing AR 90-3(4)), *aff'd*, 31 Fed. Appx. 202 (11th Cir. 2001) (table).   The Commissioner explained in her rescission notice that AR 90-3(4) has been rendered obsolete by the publication of final rules amending 20 C.F.R. §§ 404.1560(b) and 416.960(b) to clarify that the services of a VE, vocational specialist, or other vocational resources may be used at step four of the sequential evaluation process. *See* 68 Fed. Reg. 51,317 (Aug. 26, 2003). The ALJ's reliance on the VE's testimony was supported by substantial evidence.

### B. Hypothetical Question

Plaintiff contends that it was error for the ALJ to ask two separate hypotheticals, one with physical restrictions and a second with mental limitations. Plaintiff contends it was error for the ALJ not to ask the VE how Plaintiff's combined impairments would impact his ability to perform his work as a security clerk and to propose "inaccurate" descriptions of Plaintiff's mental limitations. The Commissioner argues that Plaintiff has confused the need for the ALJ to consider the combined effect of Plaintiff's impairments with the manner in which he propounds questions to the VE.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations,

the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*

Plaintiff contends that, although the ALJ asked the VE how mental limitations would affect Plaintiff's ability to perform his past work, the impairments were not combined with the physical impairments and did not accurately represent Plaintiff's mental impairments which the ALJ characterized as "slight to moderate" when they were actually "moderate" impairments. Plaintiff points to Dr. Guidera's evaluation dated January 30, 2002 which stated that Plaintiff's overall focus, concentration and attention seemed to be below average, he had moderate restrictions in terms of his social functions, focus, attention, and concentration, and he would have difficulty relating to the public and peers and supervision in the normal and appropriate manner. R. 288-89. Plaintiff also admitted to consuming beer at a rate of four to six beers per day, sometimes more, and understanding that it was inappropriate. R. 288.

Plaintiff points to the Mental Residual Functional Capacity Assessments from two state reviewing psychologists dated February and July 2002, which found Plaintiff to have moderate limitations in his ability to maintain attention and concentration for extended periods, and the ability

to complete a normal workday and workweek without interruptions from psychologically based symptoms, and moderate difficulties in maintaining concentration, persistence or pace, remembering and understanding detailed instructions, carrying out detailed instructions, and performing activities within a schedule, maintaining regular attendance and punctuality.  R. 270-72, 284, 304-05.

Plaintiff complains that "all of the restrictions that the ALJ mentioned in the hypothetical were noted to be moderate, as opposed to slight to moderate as the ALJ posed to the VE."  The phrase "slight to moderate" included "moderate" and the ALJ positing of Plaintiff's mental impairments in the hypothetical was proper.  In fact, the ALJ described all of Plaintiff's mental impairments as slight to moderate, except for his "interactions with supervisors and co-workers" which was described exclusively as a slight impairment.  At the hearing, Plaintiff's attorney asked the VE how the security clerk position would be affected if the individual had "difficulty interacting and getting out, talking to people or listening to what they say."  R. 377.  The VE stated that if such restriction caused Plaintiff to have trouble recording information, it could affect his job but that was "all [he] could say about that," and gave no comment about Plaintiff's ability to interact as affecting his ability to do his past relevant work.  R. 377.  The reviewing state psychologists both found Plaintiff to have either no significant limitations or only mild limitations in social interactions, and not "moderate" limitations. R. 305.

In coming to his final decision, the ALJ relied on more recent evaluations from Dr. Austin and Dr. Nwaogwugwu from 2004.  Dr. Austin evaluated Plaintiff on August 10, 2004 and opined that Plaintiff fell in the borderline range demonstrating difficulties in the areas of attention and visuospatial/constructional and low average range for all other areas, as well as fatigue, a low level of energy and persistent periods of moderate anxiety and depression.  Dr. Austin noted that Plaintiff's

-10-

response style suggested a moderate tendency toward self-deprecation and consequent exaggeration of current emotional problems. R. 77. He warned that Plaintiff may have reported more psychological symptoms than objectively exist. R. 77. It is likely that Plaintiff will view ordinary responsibilities and stresses as excessively demanding. R. 77. "Characteristically anxious, moody and aggrieved, [Plaintiff] is also preoccupied with a variety of physical fears and complaints (*e.g.*, gastrointestinal problems, muscular pains, headaches) and may be considered to be demonstrating a somatoform disorder." R. 78. Dr. Austin assigned Plaintiff only slight restrictions in understanding remembering and carrying out instructions and moderate limitations in responding appropriately to supervision, co-workers and work pressures in a work setting. R. 80-81. As the ALJ found, "Dr. Austin . . . completed a mental medical source statement, wherein he reported that the claimant demonstrated only slight to moderate mental limitations. R. 22. As the ALJ also noted, Plaintiff only sought "brief" treatment for alleged depression and other mental status changes from Atlantic Psychiatric Affiliates from May 18, 2004 through June 2, 2004. R. 19, 22. Substantial evidence supports the ALJ's hypothetical inquiry to the VE and his reliance on the VE's answer.

      The Commissioner correctly contends that Plaintiff has not shown that the ALJ's questioning of the VE was deficient merely because the ALJ first asked the VE whether Plaintiff could perform his past relevant work given his physical and postural limitations and later posed a second hypothetical question that included Plaintiff's mental limitations. R. 373-74, 377-78. After the ALJ posed the

additional mental limitations to the VE, he asked, "Would that affect that particular job that we talked about?" R. 378. The Court agrees that a fair reading of the clarification shows that the ALJ's second question was a further elaboration of his earlier hypothetical question and encompassed the VE's

-11-

earlier testimony. In *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004), the Eleventh Circuit recognized, "When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the VE to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id.* at 1240. It was not error for the ALJ to ask a second set of hypothetical questions to the VE.

### B. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his subject complaints of pain due to degenerative disc disease of the lumbar spine and cervical spine and bilateral carpal tunnel syndrome, conditions which would cause the pain, discomfort and limitations Plaintiff described. Plaintiff contends that his testimony and how it would affect his ability to work, was improperly disregarded by the ALJ. The Commissioner contends that the ALJ properly found Plaintiff's subjective complaints were beyond what would reasonably be expected in terms of intensity, duration, and frequency based on the clinical findings.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 23.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  Moreover, the ALJ complied with those standards.  He determined that Plaintiff had an objective medical condition that gave rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing the guidelines for determining Plaintiff's RFC, the ALJ stated:

> The Administrative Law Judge concludes that the allegations by the claimant and his mother regarding disabling pain and other symptoms are inconsistent with the non-medical and medical record as a whole and are not entirely credible.  the undersigned notes for the record that the claimant's mother, Ms. Diane Finley, essentially reiterated the claimant's allegations of pain and other symptoms.  However, the undersigned finds that such allegations are obviously exaggerated, extremely self-serving, and out of proportion to the severity of his medically determinable impairments as established by treating and consulting medical sources of record. Objective diagnostic studies of record, including x-rays and MRI scans have failed to establish significant

>    abnormalities that could account for the allegations of significant pain. In fact, one of the claimant's primary care treating physicians, Dr. Storey, reported that, despite multiple tests/studies to investigate his allegations of pain and other discomfort, "nothing really pathological" had been established. R. 261-62. Similarly, the consulting physician who carefully examined the claimant on August 26, 2004, Dr. Nwaogwugwu, reported: "I am of the opinion from a physiatric perspective that despite the patient's complaints of multiple symptoms, the objective examination does not support his complaints." [R. 85.] In addition, although the testimony presented at the hearing suggested that the claimant's daily activities were somewhat restricted by pain and other symptoms, he previously stated that he often prepared simple meals for himself by using the microwave, often did his own laundry, and enjoyed music and watching television. [R. 75-76.] Moreover, the claimant's allegations of significant depression are out of proportion to the relative lack of ongoing mental health treatment for the period since at least his alleged disability onset date of June 6, 2000. The claimant lists a number of prescribed medications that he allegedly takes on a regular basis. The record as a whole clearly establishes that his medications have effectively controlled the severity of his impairments without producing recurring, adverse side effects. The Administrative Law Judge does not mean to imply that the claimant does not experience some degree of symptomatology secondary to his impairments. However, the allegations at the hearing as to the intensity, nature, and duration of the claimant's symptoms, including pain, are simply not credible. The undersigned concludes that the claimant has not experienced symptomatology that precludes him from performing the previously identified modified but substantial range of light work.

R. 23-24.

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff first complains that although the ALJ stated that there was lack of medical evidence and his own doctor stated that there was "nothing really pathological," Dr. Storey also stated that "because the tenderness just touching his skin brings up the possibility of 'reflex sympathetic

dystrophy[2].'" R. 262. However, that note was made on March 1, 2002 and there was no further reference to such a diagnosis in any of the other medical records; to the contrary, on May 22, 2002, Dr. Storey noted "Patient seems to be having increased symptoms. . . . Multiple areas of pain. Patient seems to be concerned about a cervical rib. Unless very unusual cannot explain all of his problems. He has been seen by chiropractor who is progressively worried and sympathetic. Patient's symptoms seemed to be more intense today. He has been seen [at] a pain clinic, neurologists, neurosurgeon, and psychologist. At this point no diagnosis." R. 261. In referring Plaintiff to a neurologist, Dr. Ibrahim, Dr. Storey stated in a letter to him that Plaintiff at a visit on November 2, 2001, was "somewhat off the walls with numbness in both arms, inability to sleep and pain. His worry about some type of neurological or brain disease since the accident is overwhelming." R. 255. No other treating physician mentions reflex sympathetic dystrophy, a neurological disorder, despite the fact that Plaintiff received other medical treatment for his complaints during 2003 and 2004. Dr. Ibrahim, his treating neurologist, did not find reflex sympathetic dystrophy (R. 231-36), nor does any other physician mention it in the medical records (*i.e.*, Dr. Creamer, Dr. Bagnoli, Dr. Skidmore, and Dr. Atkins). Instead, Plaintiff reported other symptoms for which the specialists could not find a cause, as recognized by the ALJ. Dr. Skidmore was unable to come up with a reason for Plaintiff's alleged photophobia and peripheral visual disturbance, and even if caused by head trauma, such abnormalities were not detected by the multiple brain MRI scans that previously were obtained of Plaintiff. R. 323, 324.

---

[2]Reflex Sympathetic Dystrophy Syndrome (RSD) – also known as Complex Regional Pain Syndrome (CRPS) - is a chronic neurological syndrome characterized by: severe burning pain, pathological changes in bone and skin, excessive sweating, tissue swelling, extreme sensitivity to touch. http://www.rsds.org/2/what_is_rsd_crps/index.html.

-15-

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between his testimony and the clinical and diagnostic findings. As the ALJ noted (R. 20), Plaintiff had been seen for alleged multiple musculoskeletal discomforts, but numerous objective diagnostic tests and studies failed to document clinical abnormalities that reasonably could account for his complaints; there has been no evidence of disc herniation or spinal stenosis. R. 227, 229, 230, 256, 261, 262, 333. The ALJ also noted that there had been no significant loss of motor strength in Plaintiff's lower extremities or upper extremities. R. 20, 44-48, 83-85.

The extent of Plaintiff's daily activities is a factor the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. Plaintiff also contends that his activities of daily living identified by the ALJ, such as his ability to prepare simple meals, do his own laundry, enjoy music, and watch television (R. 24) should not disqualify him from disability. Inconsistencies between his statements of significant pain and his activities of daily living, including walking daily for 20 minutes, were properly considered by the ALJ.

Another issue of Plaintiff's credibility is his lack of candor about his alcohol consumption. The ALJ gave Plaintiff the benefit of the doubt that he was not abusing alcohol by the time of the most recent consultative psychological evaluation by Dr. Austin in August 2004. R. 23, citing R. 75. However, Plaintiff had a history of admitting to drinking six to eight beers "to help with the pain" or "with sleeping" between 2001 and 2003, and admitting to only "occasional" drinking at other times in the record. R. 55, 231, 288. The ALJ's reasons for discounting Plaintiff's credibility regarding his impairments are supported by substantial evidence.

### *IV. CONCLUSION*

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 11, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record